**The STATE of Wyoming, Ed Herschler, Thyra Thomson, James B. Griffith, Stan Smith, and Lynn Simons, as members of the Board of Land Commissioners, James B. Griffith, as State Auditor, and Howard M. Schrinar, as Commissioner of Public Lands, Appellants (Defendants),**

v.

**W.A. MONCRIEF, Jr., Texaco Oil Company, Monsanto Oil Company, nka BHP Petroleum Company, Inc., ANR Production Company, Coastal Oil and Gas Corporation, Sohio Petroleum Company, Grace Petroleum Corp. and C.B. Moncrief, Appellees (Plaintiffs).**

No. 85–283.

Supreme Court of Wyoming.

June 3, 1986.

A.G. McClintock, Atty. Gen., Michael L. Hubbard, Senior Asst. Atty. Gen., Michael R. O'Donnell and Clinton D. Beaver, Asst. Attys. Gen., for appellants.

Morris R. Massey and William H. Brown of Brown, Drew, Apostolos, Massey & Sullivan, Casper, for appellees W.A. Moncrief, Jr. and C.B. Moncrief.

Marvin G. Twenhafel, Denver, Colorado; and Richard L. Williams of Williams, Porter, Day & Neville, P.C., Casper, for appellee Texaco Oil Co.

William T. Schwartz of Schwartz, Bon, McCrary & Walker, Casper, Bruce F. Kiely, Thomas J. Eastment, and Peter A. Moir of Baker & Botts, Washington, D.C., and Kenneth R. Satterly, Houston, Tex., for appellee Monsanto Oil Co. nka BHP Petroleum Co., Inc.

Houston G. Williams of Williams, Porter, Day & Neville, P.C., Casper, for appellee ANR Production Co.

H. Vincent Draa, III, Houston, Tex., and Thomas A. Nicholas of Hirst & Applegate, Cheyenne, for appellee Coastal Oil and Gas Corp.

John S. Carr, Houston, Tex., Warren J. Ludlow, Dallas, Tex., and Paul B. Godfrey and John A. Sundahl of Godfrey & Sundahl, Cheyenne, for appellee Sohio Petroleum Co.

Robert C. Hawley and Gretchen VanderWerf of Hawley & VanderWerf, Denver, Colo., for appellee Grace Petroleum Corp.

Before THOMAS, C.J., and BROWN, CARDINE, URBIGKIT and MACY, JJ.

MACY, Justice.

This case involves the interpretation and construction of the royalty clauses contained in six oil and gas leases on common school and state law library lands. The district court entered partial summary judgment in favor of the lessees. The State has appealed.

We reverse.

The State raises the following issues: "I. DID THE DISTRICT COURT ERR IN ITS INTERPRETATION OF THE LEASES WHEN IT RENDERED POR-

TIONS OF THE ROYALTY CLAUSE MEANINGLESS?

"II. DID THE DISTRICT COURT ERR BY APPLYING THE SCHOOL LAND TRUST IMPROPERLY IN THE CONSTRUCTION OF THE ROYALTY CLAUSE?"

The facts were stipulated to by all of the parties [1] and include the following. The six leases which are the subject of this dispute were executed from 1967 to 1976 and cover common school and state law library lands in Fremont County. In 1976, these leased lands were made part of the Long Butte Unit Area, which produces substantial quantities of natural gas. Each lessee's respective share of the gas produced is sold pursuant to a contract between the lessee and its purchaser.

Since December 1979, gas has been sold by the lessees, and royalties have been paid to the State based on the amount realized from the sales. In May of 1983, as a result of an audit conducted by the Natural Resources Production Audit Group, the state auditor issued a demand letter to the lessees in which he alleged that the State had not received all of the royalties due. According to the state auditor, the royalties should have been calculated on the basis of the highest price received by any working interest owner in the Long Butte Unit. The lessees disputed this interpretation of the leases and filed a declaratory judgment action in the district court.

The lessees' complaint requested a declaratory judgment that, under the terms of the leases, "[r]oyalties payable to the State are to be computed and paid on the basis of the amounts realized by each lessee from the sale of its gas at the wells." The State responded by asserting that (1) the trust nature of common school and state law library lands requires that the gas be sold at current fair market value; (2) the leases require that the value of gas for royalty purposes be approved by the lessor; and (3) the leases require that state

royalties be paid on gas at no less than the price received by the United States for its royalties. The parties agreed to limit the legal issue before the district court to " 'the legal basis for determining the royalty amounts payable to the State for gas produced and sold from the State leases in the Long Butte Unit.' " The parties filed motions for summary judgment. Finding the amount realized to be the proper basis for computing royalty payments, the district court denied the State's motion and entered summary judgment in favor of lessees. The question is now before this Court pursuant to a Rule 54(b), W.R.C.P., determination that there is no just reason for delay.

The disputed royalty provisions contained in the six leases, drafted by the State, are identical and state in part:

"(d) ROYALTIES. The royalties to be paid by lessee are: (i) on oil, one-eighth of that produced, saved, and sold from said land, the same to be delivered at the wells or to the credit of lessor into the pipe line to which the wells may be connected; (ii) *on gas,* including casinghead gas or other hydrocarbon substance, produced from said land saved and sold or used off the premises or in the manufacture of gasoline or other products therefrom, *the market value at the well of one-eighth of the gas so sold or used, provided that on gas sold at the wells the royalty shall be one-eighth of the amount realized from such sale.*

\*     \*     \*     \*     \*     \*

"ON OTHER KINDRED HYDROCARBONS AND SUBSTANCES: On all other hydrocarbons of value and gaseous substances and elements produced or extracted, including propane, butane, sulphur, nitrogen, carbon dioxide, and helium, at such royalty as shall be mutually determined to be fair and reasonable. *"For royalty purposes on gas and natural gasoline the value shall be as approved by the lessor,* and in the determi-

---

1. Because the parties stipulated to all of the material facts, we need not consider whether there exists a genuine issue of material fact precluding summary judgment. Upon their stipulation, the question became one of law for the district court to decide.

nation of the value of natural gasoline the fair cost of extraction shall be considered as a deductible item; provided, however, that the allowance for the cost of extraction may exceed two-thirds of the amount or value only on approval of the lessor and *in no event shall the price for gas, or natural gasoline, be less than that received by the United States of America for its royalties from the same field.*

"In cases where natural gas is produced and the natural-gas gasoline extracted therefrom only one royalty shall be paid, except in the event the residue or dry gas shall be marketed it shall then constitute a separate commodity and a royalty shall be paid thereon as above provided.

"Natural gas and oil actually used for operating purposes upon the land and, except as to the ultimate sale thereof, gas or liquid hydrocarbons returned to the sand for stimulating the production of oil or secondary recovery purposes shall be royalty free." (Emphasis added.)

For convenience, the provision under subsection (d)(ii) of the leases will be referred to in this opinion as the market-value/amount-realized provision. The provision stating that "the value shall be as approved by the lessor" will be referred to as the lessor-approval provision. Finally, the clause beginning "in no event" will be referred to as the federal-floor provision.

Upon reviewing the royalty provisions quoted above, the district court determined that the leases were ambiguous. The court, therefore, looked to extrinsic evidence to aid its interpretation and construction. The district court's examination of the evidence disclosed that the lessor-approval and federal-floor provisions were part of the leases as originally drafted. The market-value/amount-realized provision, however, was added later. Despite the retention of the lessor-approval and federal-floor provisions, the district court concluded that the addition of the market-value/amount-realized provision had the ef-

fect of "superseding" the lessor-approval and federal-floor provisions.

The State contends before this Court that in reading the lessor-approval and federal-floor provisions out of the leases, the district court in effect rewrote the leases contrary to the parties' intent and the law. In contrast, lessees claim that the court merely "reconciled" what were clearly conflicting provisions of the leases.

■ An oil and gas lease is a contract and must be construed under the doctrines applicable to contracts. *Kuehne v. Samedan Oil Corporation,* Wyo., 626 P.2d 1035 (1981). In *Amoco Production Company v. Stauffer Chemical Company of Wyoming,* Wyo., 612 P.2d 463, 465 (1980), we stated the general rules for contract interpretation:

"Our basic purpose in construing or interpreting a contract is to determine the intention and understanding of the parties. [Citations.] If the contract is in writing and the language is clear and unambiguous, the intention is to be secured from the words of the contract. [Citations.] And the contract as a whole should be considered, with each part being read in light of all other parts. [Citations.] The interpretation and construction [are] done by the court as a matter of law. [Citations.]

"If the contract is ambiguous, resort may be had to extrinsic evidence. [Citations.] An ambiguous contract 'is an agreement which is obscure in its meaning, because of indefiniteness of expression, or because a double meaning is present.' *Bulis v. Wells,* [Wyo.], 565 P.2d [487,] 490 [ (1977) ]. Ambiguity justifying extraneous evidence is not generated by the subsequent disagreement of the parties concerning its meaning. [Citation.]

" * * * Whether ambiguity exists is a question of law. [Citations.] We are, therefore, at liberty to make a determination as to the existence of ambiguity whether or not the parties here agree thereto one way or the other, and whether or not the trial court has reached a

conclusion thereon one way or the other."

As indicated above, in the present case the district court found the leases to be ambiguous and, therefore, looked to extrinsic evidence to discover their meaning. We do not find the leases ambiguous and, therefore, limit our review to the language of the leases themselves.

When interpreting the language of a contract, we must attempt, where possible, to give each provision meaning in light of the parties' purpose and intent. *Sunburst Exploration, Inc. v. Jensen,* Wyo., 635 P.2d 822 (1981). A construction neutralizing or annulling one provision should not be adopted if the contract can be construed so as to give effect to all of its provisions. *Rossi v. Percifield,* Wyo., 527 P.2d 819 (1974). If possible, provisions which appear to be conflicting must be reconciled before the court nullifies any provision. *Shepard v. Top Hat Land & Cattle Co.,* Wyo., 560 P.2d 730 (1977). Because we find that each of the provisions in the leases in the present case can be read in a manner consistent with the others, we hold that the district court erred in interpreting the leases so as to render the federal-floor and lessor-approval provisions meaningless.

We consider first the lessor-approval provision. The district court found that interpreting the provision so as to give the board of land commissioners the authority to set the value of gas for royalty purposes was unacceptable, because such an interpretation would nullify the market-value/amount-realized provision. The State contends that the lessor-approval clause merely provides a check on lessees' otherwise unrestricted capacity to determine market value. That is, the lessor-approval clause provides a mechanism by which the State may request an accounting of the objective standards used by lessees in arriving at market value.

Constrained as we are to adopt a meaning for the lessor-approval clause which is consistent with other provisions of the leases, we find the State's position to be correct. Interpreted in the manner suggested by the State, the lessor-approval clause does not render the market-value/amount-realized provision meaningless. The value of the gas for royalty purposes must still be based on market value or the amount realized. However, pursuant to the lessor-approval clause, lessees must be able to demonstrate that the amount paid under these standards is neither arbitrary nor capricious.

Our holding does not mean that the board of land commissioners may demand royalties on the basis of the highest price paid for gas in the field. Under the lease provisions, the board of land commissioners must accept royalties on the basis of either the market value/amount realized or, as we will see, the federal floor.

We turn next to consideration of whether the federal-floor provision creates an ambiguity in the leases. We find that it does not. The federal-floor provision, like the lessor-approval clause, can be read together with the market-value/amount-realized provision in a manner which is not inconsistent. As indicated above, the value of gas for royalty purposes is to be based on market value or the amount realized. However, the language that "in no event shall the price for gas, or natural gasoline, be less than that received by the United States" clearly indicates that the market-value/amount-realized provision was intended to be controlled by the federal-floor provision. If the market value or amount realized is higher than the federal floor, royalties must be paid on the basis of market value or amount realized. Conversely, if the amount realized or market value is lower than the federal floor, royalties must be paid on the basis of the federal floor. Consistent with the rules of contract interpretation stated above, this holding gives meaning to both the market-value/amount-realized provision and the federal-floor provision.

Our holding also gives greater meaning to the lessor-approval clause. If, for example, a lessee offers royalties on the basis of federal floor when in fact a higher price

was received for the gas on the basis of either market value or the amount realized, the board of land commissioners may then demand an accounting pursuant to the lessor-approval clause.

The State makes a forceful argument, both here and before the district court, that it is important to recognize that the lands in question are held in trust by the State. See *State ex rel. Huckfeldt v. State Board of School Land Commissioners*, 20 Wyo. 162, 122 P. 94 (1912); *Mayor v. Board of County Commissioners*, 64 Wyo. 409, 192 P.2d 403, reh. denied 64 Wyo. 430, 195 P.2d 752 (1948). The board of land commissioners acts as trustee over these lands and may lease them for the benefit of the public schools subject to the limitation that "the largest possible proceeds" must be realized. Article 18, § 3, Wyoming Constitution. According to the State, "[t]he existence of the trust goes to the question of the parties['] intent in entering this contract." In other words, the board of land commissioners' duty to realize the largest possible proceeds is a surrounding circumstance which must be considered when interpreting these leases.

The district court concluded that the effect of the provisions of the leases is dictated by their terms and the intention of the parties as determined by applicable contract law and that the trust argument could not force an inconsistent interpretation. We find that the language of the leases is unambiguous and must control. Therefore, we need not consider the proposition relied on by the State that:

> " 'A lease of school lands constitutes a contract between the state and the lessee, which vitally affects the public interest, and should be construed liberally in favor of the public. * * * ' [73A] C.J.S. Public Lands, Section 95 [at] 549 (1983)."

If it were necessary in this case to go beyond the plain meaning of the words of the contract to determine the parties' intent, then the existence of the trust and the corresponding duties of the trustees could be helpful. This is not such a case.

For all of the reasons stated above, we find that the district court erred in its interpretation of the leases. Therefore, the partial summary judgment granted in favor of lessees is reversed, and the cause is remanded for entry of summary judgment in favor of the State in a manner consistent with this opinion.