CITIES SERVICE OIL AND GAS COR-
PORATION, now known as Oxy, USA,
Inc., Appellant (Defendant),

v.

The STATE of Wyoming, Mike Sullivan,
Jack Sidi, Kathy Karpan, Stan Smith,
and Lynn Simons, as members of the
Board of Land Commissioners; How-
ard M. Schrinar, as Commissioner of
Public Lands; and Jack Sidi, as State
Auditor, Appellees (Plaintiffs).

The STATE of Wyoming, Mike Sullivan,
Jack Sidi, Kathy Karpan, Stan Smith,
and Lynn Simons, as members of the
Board of Land Commissioners; How-
ard M. Schrinar, as Commissioner of
Public Lands; and Jack Sidi, as State
Auditor, Appellees (Plaintiffs).

v.

CITIES SERVICE OIL AND GAS COR-
PORATION, now known as Oxy, USA,
Inc., Appellee (Defendant).

Nos. 90–266, 90–267.

Supreme Court of Wyoming.

Aug. 26, 1992.

Joseph B. Meyer, Atty. Gen. and Vicci M. Colgan, Sr. Asst. Atty. Gen., for appellee in Case No. 90–266 and appellant in Case No. 90–267.

Brent R. Kunz of Hathaway, Speight, Kunz, Trautwein & Barrett, Cheyenne and Charles L. Kaiser, Anthony J. Shaheen, and Mary Viviano Laitos of Davis, Graham & Stubbs, Denver, Colo., for Coastal Oil & Gas Corp., Columbia Gas Development Corp., CNG Producing Co., and Enron Oil & Gas Co., as amici curiae.

Before MACY, C.J., and THOMAS, URBIGKIT,* and GOLDEN, JJ. and RYCKMAN, District Judge.

URBIGKIT, Justice.

In this case, we decide entitlement of the State of Wyoming (State) to receive royalties on tax reimbursements paid by gas purchasers to Oxy USA, Inc. (Oxy), a natural gas producer previously known as Cities Services Oil and Gas Corporation. We also consider assessment of statutory high rate penalty interest on unpaid and past-due royalties.

With resolution of cross appeals from the trial court decision, we affirm the trial court's ruling that the State is entitled to royalties on ad valorem, severance and conservation tax reimbursements under the "federal floor" provision in the applicable State oil and gas leases. We reverse the trial court's determination that the State is not entitled to royalties on tax reimbursements under the "amount realized" provision in the same leases. We affirm the trial court's imposition of interest on delinquent royalty payments, but we modify the trial court's order which established the date when interest payment obligation accrued.

## I. ISSUES

Catherine MacPherson of MacPherson Law Offices, Rawlins and Deborah Bahn Price of Liskow & Lewis, New Orleans, La., for appellant in Case No. 90–266 and appellee in Case No. 90–267.

* Chief Justice at time of oral argument.

Oxy raises the following issues as appellant in Case No. 90–266:

I. Are royalties owed on tax reimbursements under the "federal floor" clause contained in State

Lease Nos. 73–46293 and 75–82368 based on the State's proof that federal lessees in the same fields paid federal royalties on tax reimbursements?

II. Is the State entitled to a judgment that authorizes it to collect additional royalties for the periods covered by this litigation if, at some future date, other federal lessees pay royalties on tax reimbursements during these periods?

III. Is the State entitled to 18% interest under W.S. § 30–5–303(a) (1977 Repub.Ed.) from June 1, 1982, until the additional royalties due, if any, are paid?

The State, as appellee in Case No. 90–266, identifies three issues:

1. Are royalties due on tax reimbursements under the "federal floor" clause of the state lease?

2. Is the order on summary judgment within the scope of the declaratory judgment action?

3. Is interest due at the statutory rate for late payment of royalties?

In Case No. 90–267, the State raises a single issue as appellant:

Are royalties on tax reimbursements due under the "amount realized" clause of the state lease?

Oxy, as appellee in Case No. 90–267, responds by restating in argument:

A. The plain meaning of the royalty clause in the state lease form precludes the assessment of royalties on tax reimbursements.

1. The plain meaning of the term "amount realized" connotes a "net" rather than a "gross" amount.

2. Tax reimbursements are not payments for "production" within the meaning of state lease royalty provisions.

B. Wyoming jurisprudence and jurisprudence from other jurisdictions uniformly require the deduction of tax payments to compute the "amount realized".

C. The inclusion of tax reimbursements in the "amount realized" would create an unjustified anomaly in the state lease royalty provision.

In its reply brief in Case No. 90–267, the State rephrases the issue as a two-part argument:

I. The plain meaning of the term "amount realized" as used in the lease means the "amount realized" from the sale of all the gas.

II. Wyoming jurisprudence and other jurisdictions do not uniformly require the deduction of tax payments to compute the "amount realized."

Finally, in an amicus brief submitted by various Wyoming oil and gas producers with interests similar to Oxy's interests in state oil and gas leases, the following issues are presented:

I. The State impermissibly seeks to impose federal lease royalty standards on state leases.

II. The district court's federal-floor holding must be rejected because it is administratively infeasible.

These complex issues test the pricing effects for royalty purposes provided by reimbursement clauses emplaced within the federal Natural Gas Policy Act of 1978 (NGPA), 15 U.S.C.A. §§ 3301, et. seq.

For purposes of these cross appeals, we recognize three issues:

1. Was the trial court correct in ruling that royalties to the State were due on tax reimbursements under the "federal floor" provision of the state leases?

2. Was the trial court correct in ruling that royalties to the State were not due on tax reimbursements under the "amount realized" clause of the state leases?

3. Was the trial court correct in ruling that the State was entitled to interest pursuant to Wyo.Stat. § 30–5–303(a) (Supp. 1992) for the late payment of royalties?

## II. FACTS

The essential facts in this case are not in dispute. Under the Wyoming Constitution and statutes, the Board of Land Commissioners is responsible for mineral leasing of state lands. Wyo. Const. art. 18, § 3;

Wyo.Stat. § 36–6–101 (Supp.1992). Oxy, as assignee of two state oil and gas leases, holds State Lease No. 73–46293 in Carbon County, Wyoming and State Lease No. 75–82368 in Sweetwater County, Wyoming. Oxy operates a single natural gas producing well on each of the leased sites.

Oxy (then known as Cities Services Oil and Gas Corporation) entered into separate gas purchase contracts with Cities Services Gas Company (CSGC) for gas produced from the two state lease wells. From January 1980 through December 1986 (the relevant period for royalty computation purposes in this case), Oxy produced natural gas from the two wells and sold the gas to CSGC. During this period, natural gas sales were regulated by the NGPA which was passed by Congress to establish a maximum allowable ceiling price for natural gas.

There are federal gas leases with producing wells in the same fields where Oxy's two wells are located. At various times between 1980 and 1986, the United States received royalty payments from those leases. Some but not all of the federal royalty payments were calculated on the basis of the maximum applicable NGPA amount plus tax reimbursements for ad valorem, severance and conservation taxes.

Following a 1987 audit of Oxy gas production and State royalty payment figures for the period from 1980 through 1986, the Wyoming State Auditor concluded that Oxy had failed to pay royalties on ad valorem tax reimbursements it had received from CSGC during a significant portion of the previous six-year period. Because the federal government had received royalties from ad valorem, severance and conservation tax reimbursements during this period, the State Auditor concluded that Wyoming was entitled to the same benefit by receipt of similar royalty payments and demanded that Oxy pay claimed delinquent amounts in the sum of $140,802.31.

When Oxy refused to pay, the State brought a declaratory judgment with a money judgment demand in the District Court, First Judicial District, Laramie County, Wyoming. The State asked the trial court to declare that royalties were owed on tax reimbursements either received or receivable by Oxy from CSGC and to enter judgment for the delinquencies claimed with statutory penalty interest pursuant to Wyo.Stat. § 30–5–303. Oxy not only denied the State's claim for unpaid royalties on ad valorem tax reimbursements and interest, but also counterclaimed seeking reimbursement for royalties Oxy had previously paid to the State based on severance and conservation tax reimbursements pricing. Oxy premised its counterclaims on the argument that the State was not entitled to royalties on severance and conservation tax reimbursements under the royalty provisions in the applicable state leases and, as a result, such portions of previous royalty payments should be repaid by the State.

After a hearing on cross motions for summary judgment, the trial court decided that the State was entitled to retain royalties on severance and conservation tax reimbursements under the "federal floor" provision in the state leases (royalties previously paid by Oxy to the State and contested by Oxy in its counterclaim). The "federal floor" provision also entitled the State to receive additional royalties for ad valorem tax reimbursements (royalties the State sought in its complaint). Further, the trial court ruled that the State was not entitled to royalties on tax reimbursements for ad valorem, severance or conservation taxes under the "amount realized" provision in the state leases. Consequently, the State was ordered to refund or credit royalties previously paid by Oxy on severance and conservation tax reimbursements until such time as federal lessees in the same fields remit royalties on such tax reimbursements. Finally, the trial court ordered that the State was entitled to eighteen percent per annum interest on delinquent royalties owed by Oxy from June 1, 1982 through the date of eventual payment. Interest was found to accrue beginning with "the first day of the month two months after the last day of the month in which taxes were due."

Both Oxy and the State appealed. In Case No. 90–266, Oxy contests the trial court's ruling that the State is entitled to royalties for ad valorem, severance and conservation tax reimbursements under the "federal floor" provision in the state leases. Oxy contends that the State is not entitled to receive any tax reimbursement royalties under either the "federal floor" or "amount realized" provisions in the state leases. Oxy also disputes the trial court decision entitling the State to collect additional royalties for the period of this litigation if, at some point in the future, federal lessees pay additional tax reimbursement-based royalties to the federal government. Finally, Oxy argues that the statute authorizing the State to collect eighteen percent interest on unpaid royalties is not applicable under the facts presented in this case.

In Case No. 90–267, the State contests the trial court's decision that tax reimbursements are not royalty-bearing under the "amount realized" clause in the state leases. Relying on this court's decision in *State v. Moncrief,* 720 P.2d 470 (Wyo.1986), the State argues that in addition to receiving royalties under the "federal floor" provision, it should also have the option of using the "amount realized" provision in the state leases to justify receiving royalties on tax reimbursements.

## III. STANDARD OF REVIEW

 Appellate resolution of the issues decided by the trial court on cross motions for summary judgment are governed by W.R.C.P. 56 and our well-established standard of review. *See Provence v. Hilltop Nat. Bank,* 780 P.2d 990 (Wyo.1989). Because the parties entered into a joint stipulation of facts and the essential facts are not in dispute, we focus our attention on the question of whether summary judgment was properly entered as a matter of law. W.R.C.P. 56(c). *See Cordova v. Gosar,* 719 P.2d 625 (Wyo.1986). We accord no deference to and are not bound by the trial court's decisions on issues of law. *True Oil Co. v. Sinclair Oil Corp.,* 771 P.2d 781 (Wyo.1989); *Robinson v. Bell,* 767 P.2d 177 (Wyo.1989).

## IV. DISCUSSION

### A. *"Federal Floor" Provision*

Since the State did not elect to receive an "in kind" royalty share of gas production pursuant to Section 2(e) in the state leases,[1] the critical contractual language which determines the amount of the State's royalty in this case is found in Section 2(d) in the identical state leases. The royalty clause states in part:

SECTION 2. THE LESSEE AGREES:

\* \* \* \* \* \*

(d) ROYALTIES. The royalties to be paid by lessee are: \* \* \* (ii) on gas, including casinghead gas or other hydrocarbon substance, produced from said land saved and sold or used off the premises or in the manufacture of gasoline or other products therefrom, the market value at the well of one-eighth of the gas sold or used, provided that on gas sold at the wells the royalty shall be one-eighth of the amount realized from such sale.

\* \* \* \* \* \*

For royalty purposes on gas and natural gasoline the value shall be as approved by the lessor, \* \* \* and in no event shall the price for gas, or natural gasoline, be less than that received by the United States of America for its royalties from the same field.[2]

---

1. Section 2(e) states in part:
 DISPOSITION OF ROYALTY OIL AND GAS. To deliver to the lessor, or to such individual, firm or corporation as the lessor may designate, all royalty oil, gas, or other kindred hydrocarbons, free of charge on the premises where produced; or, at the option of the lessor, and in lieu of said royalties in kind, the lessee agrees to pay the lessor the field market price or value of all royalty oil, gas, or other kindred hydrocarbons produced and saved.

2. In *Moncrief,* 720 P.2d at 473, we labelled various royalty provisions in a comparable state lease:

 For convenience, the provision under subsection (d)(ii) of the leases will be referred to in this opinion as the market-value/amount-realized provision. The provision stating that "the value shall be as approved by the lessor" will be referred to as the lessor-approval provision. Finally, the clause beginning "in no

In *Moncrief,* 720 P.2d 470, this court analyzed identical state lease royalty language for ambiguity. "An oil and gas lease is a contract and must be construed under the doctrines applicable to contracts." *Id.* at 473 (citing *Kuehne v. Samedan Oil Corp.,* 626 P.2d 1035 (Wyo.1981)). We found no ambiguity and held that the market value/amount realized, lessor approval and federal floor provisions can and should be read in a consistent manner. *Moncrief,* 720 P.2d at 474. *See also State v. Pennzoil Co.,* 752 P.2d 975, 979 (Wyo. 1988) and *State v. Davis Oil Co.,* 728 P.2d 1107, 1109 (Wyo.1986). After reversing the district court's determination that the market value/amount realized provision had the effect of superseding the lessor approval and federal floor provisions, *Moncrief* went on to say:

> Under the lease provisions, the board of land commissioners must accept royalties on the basis of either the market-value/amount-realized or, as we will see, the federal-floor.
>
> * * * As indicated above, the value [3] of gas for royalty purposes is to be based on market value or the amount realized. However, the language that "in no event shall the price of gas, or natural gasoline, be less than that received by the United States" clearly indicates that the market-value/amount-realized provision was intended to be controlled by the federal-floor provision. If the market value or amount realized is higher than the federal floor, royalties must be paid on the basis of market value or amount realized. Conversely, if the amount realized or market value is

lower than the federal floor, royalties must be paid on the basis of the federal floor. Consistent with the rules of contract interpretation stated above, this holding gives meaning to both the market-value/amount-realized provision and the federal-floor provision.

*Moncrief,* 720 P.2d at 474.

▮ The fact that the parties to the leases disagree as to the contractual basis for royalty calculation does not necessarily indicate ambiguity. *Amoco Production Co. v. Stauffer Chemical Co. of Wyoming,* 612 P.2d 463, 465 (Wyo.1980) (citing *Homestake–Sapin Partners v. United States,* 375 F.2d 507 (10th Cir.1967)). We affirm our decision in *Moncrief* and agree with the parties' assertions in this case that the royalty clause taken as a whole and the "federal floor" provision taken separately are unambiguous. We examine the royalty clause portion of the lease agreements to determine the proper method of determining the State's royalty share.

As in *Moncrief,* the "federal floor" provision in the two state oil and gas leases at issue provides:

> [I]n no event shall the *price* for * * * natural gasoline * * * be less than that received by the United States of America *for its royalties* from the same field. (Emphasis added.)

The parties emphasize different words in the "federal floor" provision and, consequently, interpret the provision language differently. Oxy emphasizes the significance of the word "price" in the "federal floor" provision and interprets "price" to limit the State's royalty payment solely to

event" shall be referred to as the federal-floor provision.

3. Though all the parties submitting briefs in this case and the trial court in its decision letter devote a substantial amount of time, space and energy in discussing the distinctions between "value," "price," and other related terms such as "gross proceeds," "net proceeds," and "federal receipts," we apply well-established contract law and look for the plain meaning of the written lease agreement. In *Klutznick v. Thulin,* 814 P.2d 1267, 1270 (Wyo.1991) we said:

> The intention of the parties to a clear and unambiguous written agreement will be derived from the entire writing and determined

as a matter of law. * * * Extrinsic evidence will not be used to contradict the plain meaning of a clear and unambiguous written agreement. * * * We will not rewrite a clear and unambiguous contract under the guise of interpretation. * * * We employ common sense and good faith in construing contracts, and the words and acts of the parties must be given effect in accordance with the meaning which they would convey to reasonable men at the time and place of their use or commission.

*See also Moncrief v. Harvey,* 816 P.2d 97, 103 (Wyo.1991).

the amount for which the State's one-eighth royalty share of the natural gas produced from each state lease is sold. Oxy says that "price" automatically excludes any tax reimbursements from royalty calculation since the State's royalty share would be tax-exempt if the State chose to receive its royalty share on an "in kind" basis. Oxy argues that the State's interpretation of the "federal floor" provision improperly ties Oxy's royalty obligation to the federal government's royalty receipts (which are computed on the basis of the maximum sale price of natural gas under the NGPA plus tax reimbursements) rather than the price the federal government receives for its royalty share of natural gasoline as mandated by a literal and narrow reading of the "federal floor" provision. Thus, Oxy contends that the "federal floor" provision merely provides assurance that the State will not receive a price

for its royalty share of the natural gas produced from a state lease that is less than the price the federal government gets from the sale of its royalty share, causing the State's royalty to be calculated solely on the basis of sales price without including tax reimbursements for ad valorem, severance or conservation taxes.

On the other hand, the State contends that since all of the gas produced by Oxy is sold by Oxy as a whole (i.e., the State's royalty share of natural gas is not "segregated out" and sold separately), since Oxy is entitled to and does receive tax reimbursements from its purchasers in addition to the maximum ceiling price that it receives for natural gas under the NGPA,[4] and since Oxy pays royalties to the federal government calculated on the basis of NGPA ceiling price plus tax reimbursements, then the State is entitled under the

---

**4.** In *Enron Oil & Gas Co. v. Department of Revenue and Taxation, State of Wyo.*, 820 P.2d 977, 979–80 (Wyo.1991), this court discussed the ceiling price for natural gas under the NGPA and tax reimbursements for ad valorem and severance taxes:

> The natural gas industry is regulated by the federal government, in part by the Natural Gas Policy Act (NGPA), 15 U.S.C.A. §§ 3301 et seq. (West 1982). The general rule is that producers may not sell natural gas for more than the maximum price set under the NGPA. However, 15 U.S.C.A. § 3320 provides certain exceptions:
>
> **§ 3320. Treatment of State severance taxes and certain production-related costs**
>
> **(a) Allowance for State severance taxes and certain production-related costs.**—Except as provided in subsection (b) of this section, a price for the first sale of natural gas shall not be considered to exceed the maximum lawful price applicable to the first sale of such natural gas under this part if such first sale price exceeds the maximum lawful price to the extent necessary to recover.—
>
> **(1)** State severance taxes attributable to the production of such natural gas and borne by the seller, but only to the extent the amount of such taxes does not exceed the limitation of subsection (b) of this section; and
>
> **(2)** any costs of compressing, gathering, processing, treating, liquefying, or transporting such natural gas, or other similar costs, borne by the seller and allowed for, by rule or order, by the Commission.
>
> **(b) Limitation on State severance taxes.**—The State severance tax allowable under subsection (a)(1) of this section with respect to

the production of any natural gas may not include any amount of State severance taxes borne by the seller which results from a provision of State law enacted on or after December 1, 1977, unless such provision of law is equally applicable to natural gas produced in such State and delivered in interstate commerce and to natural gas produced in such State and not so delivered.

**(c) Definition of State severance tax.**—For purposes of this section, the term "State severance tax" means any severance, production, or similar tax, fee, or other levy imposed on the production of natural gas—

> **(1)** by any State or Indian tribe (as described in section 3316(b)(2)(B)(ii) of this title); and
>
> **(2)** by any political subdivision of a State if the authority to impose such tax, fee, or other levy is granted to such political subdivision under State law.

In *Enron Oil & Gas Co.*, this court discerned that the "value" of natural gas for tax purposes is the price of the natural gas under the NGPA "enhanced by the reimbursement of both the severance and ad valorem taxes assessed by the State of Wyoming." *Id.* at 982.

The same rationale developed in *Enron Oil & Gas Co.* to determine that taxable value should be applied to this case. Under the "federal floor" provision in the state leases, the "price" of natural gas includes tax reimbursements. *See also Hoover & Bracken Energies, Inc. v. United States Dept. of Interior*, 723 F.2d 1488, 1491 (10th Cir.1983), *cert. denied* 469 U.S. 821, 105 S.Ct. 93, 83 L.Ed.2d 39 (1984) ("the actual price [for federal royalty purposes] * * * was the ceiling amount [under the NGPA] plus the amount of taxes.").

"federal floor" provision to receive the same royalty amount as the federal government. By emphasizing the "for its [the federal government's] royalties from the same field" language in the "federal floor" provision, the State interprets and attempts to apply the provision more broadly than does Oxy.

In his decision letter ruling that the State was entitled to royalties for all tax reimbursements received by Oxy from its gas purchasers, the trial court judge stated:

> The FF/OA ["federal floor" and "owner approval"] clauses together entitle the state to royalties based on "gross receipts" which includes royalties on reimbursed tax and other payments on its leases located in those fields in which federal leases also produce. This is, although not the holding, the result required by *State v. Mon[ ]crief*, 720 P.2d 470, cited by both parties.

> [*Moncrief*] holds that the presence of the three clauses at issue in the leases does not render them ambiguous, that consistent with the law of contracts the three can, and therefore must be reconciled to give meaning to all and that the Board [of Land Commissioners] must accept royalties on either the MV/AR ["market value" and "amount realized"] or the FF/OA clause.

> I believe that the effect of the holding [in *Moncrief*] is that not only must the Board accept royalties on the basis of one clause or the other, but that conversely, it may demand them on the basis of either clause, which ever would result in the highest payments. * * *

> * * * * * *

> I recognize Oxy's argument that the State would be entitled to receive royalties based on the same gas price as that upon which the federal royalty payments are calculated, but that this does not justify a conclusion that the FF clause justifies the State's demand that its royalties be based on reimbursed taxes in addition to the price paid for the gas. But I think this is an unduly narrow reading of *Mon[ ]crief*. It seems to me that the court recognized the right of the

State, based on the FF/OA clauses, to receive royalties on its leases calculated in such a way as to provide the State with the same revenue as that generated for the federal government by its leases in the same field.

We agree with the trial court's analysis of *Moncrief* and its application here. Under the "federal floor" provision in the state leases, the State is entitled to receive the same royalty revenue that the federal government gets from its leases in the same field. If other gas producers in the same field remit royalties to the federal government calculated on the basis of NGPA ceiling price plus tax reimbursements, then state lease gas producers must calculate their State royalty payments on the same basis. This is a common sense conception that what is the same is also equal or what is not equal cannot be the same. We disagree with Oxy's argument that to construe the "federal floor" provision as establishing "federal royalty receipts" as a minimum for the royalties due under the state leases requires the royalty clause of the leases to be rewritten to conform to the federal government's view of what the "value of production" should be for federal royalty payment purposes. The underlying purpose behind the "federal floor" provision incorporated in the royalty clause in the state leases clearly mandates that the State shall receive nothing less than what the federal government gets in the way of royalty payments from natural gas wells on federal land in the same field.

Oxy's narrow interpretation of the "federal floor" provision fails to take into account the significance of the federal government's "royalties from the same field" language. This phrase, when read in conjunction with the rest of the royalty provision, implies that the State's royalty will not be less than the federal government's royalty—not just the "price" used to calculate the federal government's royalty. Thus, the "federal floor" provision actually involves dual considerations: (1) the State's royalty must be calculated on the basis of a natural gas price which is no less than the

price used to calculate the federal government's royalty; and (2) the State's royalty shall not be less than the royalty amount the United States receives from its leases in the same field. Such a result incorporates Oxy's reading of the "federal floor" provision in the former consideration and the State's interpretation of the provision in the latter consideration.

### B. "Amount Realized" Provision

■ As appellant in Case No. 90–267, the State urges that the leases in question, which call for the State to receive "one-eighth of the amount realized" from the sale of natural gas sold "at the well,"[5] requires inclusion of all tax reimbursements which Oxy receives or is entitled to receive from the sale of natural gas produced from the state-leased land. After thoughtful analysis set forth in a decision letter incorporated in the Order on Summary Judgment, the trial court ruled:

> 4. [The State is] not entitled to royalties on tax reimbursements for ad valorem, severance or conservation taxes under the "amount realized" clause of the lease. Thus, for state lease 73–46293, [the State is] not entitled to royalties on tax reimbursements received by [Oxy] for production from January 1, 1980 through December 31, 1980. For state lease 75–82368, [the State is] not entitled to royalties on tax reimbursements for production for March 1, 1982 through September 30, 1982. [Oxy] is entitled to refund or credit for royalties paid on conservation and severance tax reim-

bursements for the periods set out in this paragraph, until such time as other federal lessees remit royalties on tax reimbursements for these periods.

The trial court suggested three primary reasons for its decision: (1) the "amount realized" provision is closer in meaning to "net proceeds" than it is to "gross proceeds;" (2) "post-production costs" are deductible by a gas producer; and (3) with regard to the State's tax-exempt share of the gas produced, no taxes were assessed, no taxes were paid by Oxy and, therefore, none were reimbursed by CSGC. Because we hold that the plain meaning of the "amount realized" provision in the state leases—as supported by case law and analogous reasoning in the "federal floor" section of this opinion—requires reversal of this portion of the trial court's order, we do not pursue a point-by-point refutation of the lower court's reasoning.[6]

Our analysis and conclusion in *Moncrief* establishes that the state is entitled to receive royalty payments calculated on the basis of the "amount realized" from the sale of natural gas. *Moncrief* held that the "amount realized" and "federal floor" provisions were to be read and applied so as to give meaning to both. Thus, as in our discussion of the "federal floor" provision, the question then becomes whether or not the "amount realized" provision includes tax reimbursements.[7]

In *Enron Oil & Gas Co. v. Department of Revenue and Taxation, State of Wyo.,* 820 P.2d 977, 982 (Wyo.1991), this court stated:

> its royalty "in value" rather than "in kind" and all of the gas produced was sold "as a whole."

---

**5.** *See* section 2(d)(ii) of the state leases.

**6.** We note, however, that we recently resolved a contention similar to the trial court's second "reason." In *Amax Coal Co. v. Wyoming State Bd. of Equalization,* 819 P.2d 825 (Wyo.1991), we held that Black Lung Excise Taxes apply to the "privilege of mining" and, as such, are not deductible as "post-production costs."

Along the same lines, we recognize that the trial court's third "reason" adopts Oxy's argument that Section 2(e) of the state lease is controlling. As suggested in our discussion of the "federal floor" provision, this argument depends on the flawed premise that the State's royalty share of gas production is somehow separated or "segregated out" from the sale of other gas production—despite the fact that the State took

**7.** It is undisputed that the natural gas produced and sold by Oxy has all been sold "at the well." Thus, for purposes of calculating the State's royalty, we consider the "amount realized" from the sale of the gas rather than the "market value." The "market value" provision only applies to gas which is "sold or used off the premises or in the manufacture of gasoline or other products therefrom." *See Davis Oil Co.,* 728 P.2d 1107 (quoting *Piney Woods Country Life School v. Shell Oil Co.,* 726 F.2d 225 (5th Cir. 1984), *cert. denied* 471 U.S. 1005, 105 S.Ct. 1868, 85 L.Ed.2d 161 (1985)).

[I]t is evident that the value of the gas to purchasers is not just the price of the gas itself. Purchasers, at least in the instances that are at issue here, are clearly willing to pay not only the maximum price permitted by the NGPA, but also a price enhanced by the reimbursement of both the severance and ad valorem taxes assessed by the State of Wyoming.

Just as the Wyoming statutes require a "measurement of value" at the time natural gas is produced for state tax assessment purposes, so too the state oil and gas leases require calculation of the "amount realized" by the gas producer for state royalty purposes. For the same reasons that the "measurement of value" in *Enron Oil & Gas Co.* included the NGPA price for gas enhanced by tax reimbursements, the "amount realized" for royalty payment purposes also consists of the NGPA price plus tax reimbursements. In this regard, the reasoning and logic behind our decision is identical to our preceding analysis of the "federal floor" provision. Again, we conceptualize that what is to be the amount is the actuality created in finite result. The same in amount is equal in result. *See Hillard v. Big Horn Coal Co.*, 549 P.2d 293 (Wyo.1976).

■ *Moncrief*, 720 P.2d 470 clearly indicates that the state is entitled to receive the highest royalty possible. In the event that state royalties would be identical under both the "federal floor" and "amount realized" provisions, the express language in the state leases and our decision in *Moncrief* does not preclude the state from changing its mind during the duration of a lease agreement as to which provision the state will select for royalty calculation purposes. If the royalty will be identical under both provisions, the state may choose the contractual provision under which it will receive payment. This is the "most favored nation" (best deal) concept of the highest total equivalency.

We agree with the State and hold that the State is entitled to receive royalties on tax reimbursements for ad valorem, severance and conservation taxes under the "amount realized" provision in the state leases. Because Oxy received or was entitled to receive the NGPA ceiling price for natural gas plus tax reimbursements for ad valorem, severance and conservation taxes, Oxy is obligated to remit one-eighth of the amount it "realized" from the sale of all state lease natural gas. Tax reimbursements are part of the "amount" Oxy "realizes" from the sale of natural gas "at the well," and the State's royalty is properly calculated on the basis of inclusion of the tax reimbursement amount in addition to the "price" Oxy receives under the NGPA for natural gas sold to CSGC. Consequently, we reverse that portion of the trial court's order denying the State royalties under the "amount realized" provision.

## V. PENALTY INTEREST

■ After determining that Oxy owed the State additional royalties under the "federal floor" provisions in the state leases,[8] the trial court ordered:

5. [The State is] entitled to interest on each late royalty payment from June 1, 1982 through date of eventual payment at 18% per annum. Interest on each payment begins to accrue the first day of the month two months after the last day of the month in which taxes were due.

The trial court's ruling was unaccompanied by analysis either within the text of the order or within the context of the decision

---

8. The trial court ordered:

2. [The State is] entitled to royalties on the N.G.P.A. Section 102 price plus ad valorem, severance and conservation tax reimbursements received by defendant for state lease 73–46293 for production from January 1, 1981 through December 31, 1984.

3. [The State is] entitled to royalties on state lease 75–82368 as follows:

(a) For production from October 1, 1982 through March 31, 1983, at the N.G.P.A. 107(c)(5) price plus ad valorem, severance and conservation tax reimbursements received by defendant.

(b) For production from April 1, 1983 through December 31, 1984, at the N.G.P.A. Section 102 price plus ad valorem, severance, and conservation tax reimbursements received by defendant.

letter which was, by reference, incorporated in the final order.

We examined the Royalty Payment Act, Wyo.Stat. §§ 30–5–301 through 30–5–305 (1983 & Supp.1992),[9] as it applies to unpaid or delinquent royalty payments in *Independent Producers Marketing Corp. v. Cobb*, 721 P.2d 1106 (Wyo.1986) (a gas producer is entitled to the benefit of the six-month "grace period" and the Act is not applied retroactively to proceeds generated by production that occurred prior to the Act's effective date); *State v. BHP Petroleum Co., Inc.*, 804 P.2d 671 (Wyo.1991) (awareness of the deficiency in royalty payments is crucial to imposition of penalty interest); and, most recently, in *Moncrief v. Harvey*, 816 P.2d 97 (Wyo.1991) (hereinafter referred to as *Harvey*).

In *Harvey*, we quoted the applicable portions of the penalty interest statute, Wyo. Stat. §§ 30–5–301 et seq., and then applied the statute to the facts in the case. We held that a lessee who knowingly[10] failed to pay (or place into escrow pursuant to Wyo.Stat. § 30–5–302) royalty proceeds to an assignor who reserved a five percent overriding royalty interest was liable for eighteen percent per annum penalty interest for unpaid royalties pursuant to the Act. *Harvey*, 816 P.2d at 105. Further, the *Cobb* six-month "grace period" applies to royalty obligations which arise either before or after June 1, 1982, the effective date of the Act. We also held that a non-lessee/non-operator who was nothing more than a non-executive owner of a working interest was not liable for penalty interest under the Royalty Payment Act. *Id.* at 109. Finally, with regard to the lessee who is liable for unpaid royalties, we determined the correct date that production payments first became "due" under the Act and modified the district court's order accordingly. *Id.* at 106.

Oxy contends that the trial court's ruling that the State is entitled to receive statutory penalty interest pursuant to Wyo.Stat. §§ 30–5–301 through 30–5–305 is erroneous because application of the statute in this case: (1) is contrary to the underlying purposes of the Act; (2) is inequitable; and (3) would improperly require a retroactive determination of value. We disagree.

The Royalty Payment Act is a remedial statute intended "to stop oil producers from retaining other people's money for their own use." *Cobb*, 721 P.2d at 1110. Thus, since we have held in this case that the State was entitled to additional royalties under the "federal floor" provision in the state leases, imposition of penalty interest is serendipitous with the underlying purposes of the Act. Equity is not a factor for consideration because there are no exceptions in the Act providing justification for royalty nonpayment. Finally, the question of retroactivity is resolved by our decision in *BHP Petroleum Co., Inc.*, 804 P.2d

**9.** Two statutory provisions in the Royalty Payment Act are applicable to the facts in this case. Wyo.Stat. § 30–5–301(a) states:

The proceeds derived from the sale of production from any well producing oil, gas or related hydrocarbons in the state of Wyoming shall be paid to all persons legally entitled thereto, except as hereinafter provided, commencing not later than six (6) months after the first day of the month following the date of first sale and thereafter not later than sixty (60) days after the end of the calendar month within which subsequent production is sold, unless other periods or arrangements for the first and subsequent payments are provided for in a valid contract with the person or persons entitled to such proceeds. Payment shall be made directly to the person or persons entitled thereto by the lessee or operator or by any party who assumes such payment obligation under any legal arrangement.

Wyo.Stat. § 30–5–303(a) states:

Any lessee or operator, purchaser or other party legally responsible for payment who violates the provisions of this article is liable to the person or persons legally entitled to proceeds from production for the unpaid amount of such proceeds, plus interest at the rate of eighteen percent (18%) per annum on the unpaid principal balance from the due date specified in W.S. 30–5–301(a).

**10.** In *Harvey*, 816 P.2d at 107, we distinguished *BHP Petroleum Co., Inc.*, 804 P.2d 671, on the basis of the lessee's lack of awareness of the royalty payment deficiency. This writer's dissent in *Harvey* is now subject to stare decisis for non-constitutional statutory interpretation which leaves the legislature, if it desires, to readdress its legislative intent for any future application. *Allied–Signal, Inc. v. Wyoming State Bd. of Equalization*, 813 P.2d 214 (Wyo. 1991).

671. The Royalty Payment Act takes effect at such time as the lessee becomes aware of a royalty payment deficiency. We hold that Oxy became liable for penalty interest on unpaid royalties under the "federal floor" provision when it failed to include ad valorem, severance and/or conservation tax reimbursements in its calculation of state royalty amounts while making comparable royalty payments to the federal government which included tax reimbursements. All such state royalty deficiencies are subject to penalty interest.

■ The final question left to be decided is the date Oxy's duty to pay eighteen percent penalty interest commenced under the Act. Our decision in *Harvey*, 816 P.2d at 105–06 controls; however, considering the possibility of confusion over the intended application of the Royalty Payment Act in the present case, we modify the trial court's order imposing penalty interest to read as follows:

> 5. The State is entitled to interest pursuant to W.S. 30-5-301 et seq. on each late royalty payment owed the State under the "federal floor" provision in the State Leases. Oxy is entitled to the six-month "grace period" recognized in *Cobb* and [*Harvey*] for production and sales which predated the effective date of the Royalty Payment Act. Thus, additional royalty payments which Oxy owed the State under State Lease 73-46293 for production and sales prior to and immediately following the effective date of the Royalty Payment Act (for production and sale from January 1, 1981 through October 31, 1982) began accruing interest on January 1, 1983. Additional royalty payments for production (under State Lease 73-46293) from November 1, 1982 through December 31, 1984 began accruing interest not later than 60 days after the end of the calendar month within which sales were made. (For example, sales made during November, 1982 began accruing royalty penalty interest on January 30, 1983.)

Delinquent royalties owed the State under State Lease 75-82368 are also subject to penalty interest. Thus, for production and sales from October 1, 1982 through March 31, 1983 (production and sales subject to NGPA § 107(c)(5)) and for production and sales from April 1, 1983 through December 31, 1984 (subject to NGPA § 102), because such sales are not covered by the date-of-first-sale "grace period", interest began to accrue not later than 60 days after the end of the calendar month within which subsequent production is sold. (For example, sales made during October, 1982 began accruing royalty penalty interest on December 31, 1982).

## VI. CONCLUSION

We affirm the trial court's grant of partial summary judgment on behalf of the State. Summary judgment was properly entered as a matter of law to establish that the "federal floor" provision in the state leases entitles the State to receive royalties on ad valorem, severance and conservation tax reimbursements if the federal government also received royalties on such tax reimbursements from federal leases in the same field during the same period of time. Further, in establishing the right of the State to receive royalties on tax reimbursements under the "amount realized" provision in the state leases, we reverse the trial court's grant of summary judgment on that issue in behalf of Oxy and grant summary judgment to the State instead. Finally, we affirm imposition of penalty interest on delinquent royalty payments but, in light of our decision in *Harvey*, 816 P.2d 97, we modify the trial court's order as to the dates when interest began to accrue.

Modified, affirmed and remanded for any relief required hereby.