The PEOPLE of the State of
Colorado, Complainant,

v.

Michael P. ANDERSEN, Respondent.

Nos. 99PDJ033, 99PDJ066, 99PDJ126.

Office of the Presiding Disciplinary Judge
of the Supreme Court of Colorado.

July 21, 2000.

Opinion by Presiding Disciplinary Judge
ROGER L. KEITHLEY and Hearing Board
members MADELINE A. COLLISON and
KATHLEEN M. O'BRIEN, both members
of the bar.

## OPINION AND ORDER IMPOSING SANCTIONS

### SANCTION IMPOSED: ATTORNEY DISBARRED

This matter was heard on January 11, 2000, before the Presiding Disciplinary Judge ("PDJ") and two hearing board members, Madeline A. Collison and Kathleen M. O'Brien, both members of the Bar. Debora D. Jones, Assistant Regulation Counsel, represented the People of the State of Colorado (the "People") and David C. Little appeared on behalf of Michael P. Andersen ("Andersen") who was also present. The People's Exhibits 1, 2 and 3 and Andersen's Exhibit A were admitted into evidence by stipulation. The PDJ and Hearing Board heard testimony from the People's witnesses Patricia M. Marrison and Mary Lynn Elliott, and from Andersen's witness Jay Michael Stranges. Andersen testified on his own behalf.

Two disciplinary matters pending against Andersen—Case No. 99PDJ066 and Case No. 99PDJ033—were consolidated on November 16, 1999. Shortly before trial, the parties elected to consolidate Case No. 99PDJ126 into the other two matters so that all pending matters against Andersen could be addressed at the same hearing.[1]

---

1. Case No. 99PDJ126 had been filed on December 15, 1999, only twenty-eight days before trial.

Default had previously entered in both Case No. 99PDJ033 and Case No. 99PDJ066. Upon Andersen's motion, by Order dated January 4, 2000, the PDJ set aside the default in Case No. 99PDJ033. At the commencement of the hearing, Andersen moved that the PDJ also set aside the default in Case No. 99PDJ066. The People did not object; accordingly the PDJ set aside the default in Case No. 99PDJ066 and accepted respondent's Answer filed in all three matters.[2]

The PDJ and Hearing Board considered the exhibits and argument, the testimony of the witnesses, assessed the credibility of the witnesses, and made the following findings of fact which were established by clear and convincing evidence:

## I. FINDINGS OF FACT

Andersen has taken and subscribed the oath of admission, was admitted to the bar of the Colorado Supreme Court on October 15, 1992, and is registered upon the official records of the Court, attorney registration number 22139. He is subject to the jurisdiction of this court pursuant to C.R.C.P. 251.1(b).

### A. Case No. 99PDJ033

#### (1) The Trust Account Checks

Andersen met M. Patricia Marrison ("Marrison") in the summer of 1997. At the time he was suffering from depression. Andersen worked for Marrison's law firm in Colorado Springs, Colorado from July 1997 until February 16, 1999. Marrison acted as a mentor to Andersen. For a short period of time she allowed him to occupy a basement apartment in her home. Marrison considered Andersen to be a friend. From September 1998 to February 1999, because of a dispute with another of Marrison's employees, Andersen worked for Marrison from his home.

By early 1999, Andersen was using alcohol and cocaine. On February 17, 1999, Andersen left Colorado Springs, Colorado. At the time, he intended to have one final fling in Las Vegas before he committed suicide. Prior to leaving Colorado, Andersen took three checks from Marrison's law firm trust account checkbook without her knowledge or authority. He removed the checks from a section of the checkbook where they would not be readily noticed. Andersen placed Marrison's signature on the checks using a signature stamp. Andersen was aware at the time he used the stamp that he did not have Marrison's authority to do so. On February 17, 1999, Andersen negotiated one of the checks for $3,400. The check was drawn on the Marrison law office trust account which contained only client funds. Andersen knew the funds in that account did not belong to him. On February 22, 1999, Marrison's office received a call from a Las Vegas business requesting authorization to cash a trust account check for Andersen in the amount of $750. Marrison declined to authorize the payment, and examined the trust account checkbook and the trust account statements. She discovered that $3,400 had been withdrawn from the bank and that checks were missing from the trust account checkbook. She stopped payment on the missing checks.[3]

At the time Andersen took the $3,400 from the trust account, Marrison was experiencing a period of personal financial hardship of which Andersen was aware. Andersen has not yet repaid the $3,400 to the trust account.

By moving to consolidate this matter into the other two matters, respondent agreed to waive: the sixty day notice of trial pursuant to C.R.C.P. 251.18(a); the right to discovery; the right to file an Answer within twenty days of service of process; the right to adequate trial preparation time; the right to object to the hearing board members, and waived all other jurisdictional grounds. The respondent stipulated he was prepared to proceed.

2. Andersen requested that his Answer in Case No. 99PDJ126 be amended to state under Claim II "The Respondent admits that his conduct

amounted to neglect of the representation of his client in violation of Colo. RPC 1.3 and violated the provisions of Colo. RPC 8.4(d)." The People requested that the Complaint in Case No. 99PDJ126 be amended to allege a violation of the CAL. VEHICLE CODE § 10851(a) (West 2000) instead of § 1085(a). Andersen did not object and the PDJ granted both the People's and the respondent's Motions to Amend.

3. Based upon his conduct in the Marrison matter, Andersen was immediately suspended from the practice of law by the Colorado Supreme Court on March 25, 1999.

### (2) Incidents of Failing to Appear

In September 1996, Andersen failed to appear at the arraignment of his client Michael Edward Mock although he was aware of the scheduling. Neither Andersen nor his client appeared for the rescheduled arraignment in October 1996. Consequently, an arrest warrant was issued for Andersen's client.

Also in September 1996, Andersen entered his appearance in a criminal action on behalf of defendant S.J. Andersen failed to appear for the trial in December and again at the rescheduled trial date in February 1997. The court issued a contempt citation against Andersen for failing to appear. Andersen appeared for the contempt hearing and the court assessed fines and costs against him. After several resettings, the trial was set in May 1997 and Andersen again failed to appear to represent his client. Andersen's client—who was a juvenile—proceeded without counsel.

In June 1997 Andersen failed to appear at a preliminary hearing on behalf of his client Christopher Ming Yuan. Andersen's failure to appear resulted in the issuance of a contempt citation against him. Andersen failed to appear for the contempt hearing.

Also in June 1997, Andersen failed to appear for the arraignment of his client Buck Juanito Whatley. The court reset the arraignment and, on the same date, scheduled a hearing on a show cause order the court issued against Andersen for failing to appear. Andersen again failed to appear.

### B. Case No. 99PDJ126

On March 15, 1999, while using alcohol, Andersen took a 1994 Pontiac Firebird automobile from a dealership in Las Vegas, Nevada, and drove the car to Los Angeles, California. At the time he took the vehicle he understood the car did not belong to him.

The car was reported as stolen and Andersen was arrested and jailed by the Los Angeles police department. On April 9, 1999, Andersen pled no contest to a violation of the CAL. VEHICLE CODE § 10851(a) (West 2000), taking a vehicle without the owner's consent, a felony. Andersen was placed on formal probation for a period of three years, was ordered to serve thirty-eight days and was given credit for time served.

## II. CONCLUSIONS OF LAW

The Amended Complaint in Case No. 99PDJ033 alleges that Andersen violated § 18-5-102(1)(c), 6 C.R.S. (1999)(forgery) by knowingly using Marrison's signature stamp to endorse checks on Marrison's law office trust account, and that Andersen violated § 18-4-401, 6 C.R.S. (1999)(theft) by knowingly taking trust account checks and using one of them to withdraw $3,400 from the trust account without authorization. The Amended Complaint further alleges that Andersen's violation of these statutory provisions provided grounds for discipline pursuant to C.R.C.P. 251.5,[4] C.R.C.P. 251.5(b), and also violates Colo. RPC 8.4(b)[5] and Colo. RPC 8.4(c).

Colorado Revised Statutes § 18-5-102, 6 (1999) provides:

(1) A person commits forgery, if, with intent to defraud, such person falsely makes, completes, alters, or utters a written instrument which is or purports to be, or which is calculated to become or to represent if completed:

(c) A deed, will, codicil, contract, assignment, commercial instrument, promissory note, check, or other instrument which does or may evidence, create, transfer, ter-

---

4. C.R.C.P. 251.5 provides that misconduct by an attorney . . . including the following acts or omissions, shall constitute grounds for discipline, whether or not the act or omission occurred in the course of an attorney-client relationship: (b) Any act or omission which violates the criminal laws of this state or any other state, or of the United States; provided that conviction thereof in a criminal proceeding shall not be a prerequisite to the institution of disciplinary proceedings.

5. C.R.C.P. 8.4 states: It is professional misconduct for a lawyer to: (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects; (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

minate, or otherwise affect a legal right, interest, obligation, or status;[6]

The facts set forth in 99PDJ033 establish that Andersen engaged in conduct which satisfies each element of the crime of forgery. Andersen affixed the signature of another to a check knowing that he was not authorized to do so. He completed the check payable to himself in the amount of $3,400, presented it for payment and received funds from the account. In so doing, Andersen intended to deceive and defraud the entity to which the check was presented for payment, and he succeeded.

The Complaint also alleges that Anderson's conduct "... violated ... C.R.S. 18–4–401, theft." Colorado Revised Statutes § 18–4–401, 6 (1999) provides:

(1) A person commits theft when he knowingly obtains or exercises control over anything of value of another without authorization, or by threat or deception, and:

(a) Intends to deprive the other person permanently of the use or benefit of the thing of value; or

(b) Knowingly uses, conceals, or abandons the thing of value in such manner as to deprive the other person permanently of its use or benefit; or

(c) Uses, conceals, or abandons the thing of value intending that such use, concealment, or abandonment will deprive the other person permanently of its use and benefit; or

(d) Demands any consideration to which he is not legally entitled as a condition of restoring the thing of value to the other person.

Colorado Revised Statutes § 18–5–102(1.5) 6 C.R.S. (1999) provides that "[f]or the purposes of this section, a thing of value is that of "another" if anyone other than the defendant has a possessory or proprietary interest therein."

The Complaint does not specify which subsection of the criminal theft statute Anderson is alleged to have violated. C.R.C.P. 251.14 requires the Complaint to set forth clearly and with particularity the grounds for discipline and the conduct which gives rise to the charges. Pleading the general theft statute without identification of the specific subsection applicable to the conduct relied upon does not provide adequate notice to either the respondent or the PDJ and Hearing Board which statutory provision the respondent's conduct is to be tested against. Notwithstanding the pleading deficiency, Anderson admitted in his Combined Answer and Response that the conduct alleged in the Complaint violated "criminal statutes." Having admitted his conduct violated criminal statutes, the pleading deficiency in the Complaint does not alter the decision of the PDJ and Hearing Board.

Andersen's conduct provides grounds for discipline under C.R.C.P. 251.5, C.R.C.P. 251.5(b), and violates Colo. RPC 8.4(b) and Colo. RPC 8.4(c). The fact that he took funds knowing he had no right to do so is sufficient to prove knowing misappropriation. Such conduct is commonly referred to as conversion, is usually plead as a violation of Colo. RPC 8.4(c) and almost always merits disbarment. *See People v. Varallo*, 913 P.2d 1, 10 (Colo.1996)(*citing People v. Lefly*, 902 P.2d 361 (Colo.1995)(lawyer's knowing conversion of client funds almost always merits disbarment even if the funds are eventually replaced)).

Engaging in conduct which is shown to violate the forgery statute or the theft statute likewise almost always results in disbarment. *See People v. Goldstein*, 887 P.2d 634, 640 (Colo.1994)(attorney disbarred for forging a United States Bankruptcy Court judge's signature, fabricating and forging two legal documents, and knowingly misrepresenting material facts to his employer on client matters); *People v. Goens*, 803 P.2d 480, 483 (Colo.1990)(attorney disbarred for forging estate representatives' signatures and converting funds from estate to attorney's own use).

The Complaint in Case No. 99PDJ126 alleges that Andersen violated Cal. Vehicle Code § 10851(a) (West 2000) which provides:

Theft and unlawful driving or taking of a vehicle.

---

6. § 18–5–102(2), 6 C.R.S. (1999) provides that

forgery is a class 5 felony.

(a) Any person who drives or takes a vehicle not his or her own, without the consent of the owner thereof, and with intent either to permanently or temporarily deprive the owner thereof of his or her title to or possession of the vehicle, whether with or without intent to steal the vehicle . . . is guilty of a public offense . . .

California defines a violation of this statute as a felony. The Complaint in Case No. 99PDJ126 alleges that in violating CAL. VEHICLE CODE § 10851(a), Andersen's conduct provides grounds for discipline under C.R.C.P. 251.5 and C.R.C.P. 251.5(b), and constitutes violations of Colo. RPC 8.4(b) and Colo. RPC 8.4(c). Andersen knew at the time he took the vehicle that it did not belong to him. By driving the vehicle to another state, Andersen established that he had the intent to permanently or temporarily deprive the owner of the possession of the vehicle. Andersen pled no contest to a violation of this provision. C.R.C.P. 251.20(h) provides that a plea of *nolo contendere* (no contest) is a conviction for purposes of attorney discipline.[7] Conviction of a felony is conclusive proof that an individual has engaged in dishonest conduct and is, therefore, a violation of Colo. RPC 8.4(c).

Colo. RPC 8.4(b) prohibits lawyers from engaging in "criminal conduct that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." Not all convictions of the criminal laws necessarily justify the conclusion that Colo. RPC 8.4(b) has also been violated. Although the line of demarcation between such crimes has not yet been clearly drawn, the taking of another's property having substantial value without authorization exceeds the criteria required for such a violation. Such conduct is both dishonest and so lacking in trust as to place in serious question a person's fundamental character and adversely reflects upon his fitness to practice law. Andersen's California conviction provides grounds for discipline under C.R.C.P. 251.5(d) and constitutes a violation of Colo. RPC 8.4(b) and Colo. RPC 8.4(c).

The Complaint in case no. 99PDJ066 alleges four separate violations of Colo. RPC 1.3 [8] and Colo. RPC 8.4(d).[9] In all four matters, Andersen failed to appear at scheduled hearings, neglected his client's matters and ignored the orders of the courts. Over a period of ten months, from September 1996 to July 1997, Andersen entered his appearance on behalf of his clients in criminal matters and repeatedly failed to appear for trials and hearings. In one case, Andersen's juvenile client, who was particularly vulnerable, proceeded to trial when Andersen failed to appear. The potential for harm to each of his four clients arising from Anderson's conduct is beyond question. Andersen's conduct constitutes four separate violations of Colo. RPC 1.3 and Colo. RPC 8.4(d).[10]

## III. SANCTIONS/IMPOSITION OF DISCIPLINE

The PDJ and Hearing Board found that Andersen's conduct constitutes a violation of duties owed to the profession and to the public. The ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) ("ABA *Standards*") are the guiding authority for selecting the appropriate sanction to impose for lawyer misconduct.

ABA *Standard* 4.42 provides:

Suspension is generally appropriate when: (a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or

(b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.

ABA *Standard* 4.11 provides:

---

7. Conviction of a felony is a serious offense which C.R.C.P. 251.8 recognizes as presenting a sufficient threat to the public so as to constitute grounds for the immediate suspension of a lawyer's license to practice law.

8. Colo. RPC 1.3 provides: A lawyer shall act with reasonable diligence and promptness in representing a client.

9. Colo. RPC 8.4 provides that it is professional misconduct for a lawyer to: (d) engage in conduct that is prejudicial to the administration of justice.

10. The Complaint in Case No. 99PDJ066 neither alleged that the clients suffered harm nor that Andersen abandoned them.

Disbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client.

ABA *Standard* 5.11 provides:

Disbarment is generally appropriate when:
(a) a lawyer engages in serious criminal conduct a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft;
(b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.

The Commentary to ABA *Standards* 5.11 further provides:

A lawyer who engages in any of the illegal acts listed above has violated one of the most basic professional obligations to the public, the pledge to maintain personal honesty and integrity. This duty to the public is breached regardless of whether a criminal charge has been brought against the lawyer ... [i]n imposing final discipline in such cases, most courts impose disbarment on lawyers who are convicted of serious felonies.

Andersen's conduct meets the criteria under ABA *Standards* 4.42 (the neglect of Andersen's four clients), 4.11(conversion of the trust account funds) and 5.11(engaging in criminal conduct).

Andersen knowingly converted client funds and caused injury to Marrison and the clients whose funds were held in her trust account. Colorado case law consistently holds that when a lawyer knowingly converts client funds, disbarment is "virtually automatic," at least in the absence of significant factors in mitigation. *People v. Young,* 864 P.2d 563, 564 (Colo.1993) (knowing conversion of clients' funds warrants disbarment even absent prior disciplinary history and despite cooperation and making restitution). *See also People v. Motsenbocker,* 926 P.2d 576, 577 (Colo.1996)(disbarring attorney pursuant to conditional admission of misconduct for the attorney's misappropriation of bar

association funds in the amount of $2,350 while serving as treasurer even though attorney repaid funds and other mitigating factors were present). In *People v. Guyerson,* 898 P.2d 1062, 1063 (Colo.1995) the attorney was disbarred for converting large amounts of law firm and client funds by fraudulent billing practices. The respondent in *Guyerson* "not only wrongfully converted firm property, but [his conduct] also resulted in conversion of client funds, regardless of his intention." *Id.* at 1063. *See also People v. Finesilver,* 826 P.2d 1256, 1258 (Colo.1992)(disbarring the attorney and holding that "[t]hievery and deception on the part of a lawyer corrupt and betray the relationships between lawyer and client and between the legal profession and the public."); *People v. Whitcomb,* 819 P.2d 493 (Colo.1991) (conversion of trust funds warrants disbarment); *People v. Mulligan,* 817 P.2d 1028 (Colo.1991) (attorney disbarred for conversion of client funds); *People v. Grossenbach,* 814 P.2d 810 (Colo.1991) (conversion of client funds and knowing deception of clients warrants disbarment); *People v. Quick* 716 P.2d 1082, 1086 (Colo.1986)(approving the parties' conditional admission of misconduct and disbarring attorney for, among other things, theft of client's money). *But see People v. Lujan,* 890 P.2d 109, 110 (Colo.1995)(attorney suspended rather than disbarred where attorney stole funds from her law firm but the Court found certain extraordinary and tragic factors in mitigation, including the sudden emergence of a mental disorder that caused the misconduct).

Similarly, case law suggests that Andersen's use of Marrison's signature stamp to negotiate the stolen trust account checks warrants disbarment. *See People v. Jackson,* 943 P.2d 450, 456 (Colo.1997)(disbarring the attorney for submitting fraudulent documents to a lender with the intention of inducing the lender to lend money, resulting in the lender's relying on the fraudulent representations); *People v. Goldstein,* 887 P.2d 634, 642 (Colo.1994)(disbarring attorney for felony offense of forging federal bankruptcy court judge's signature and dishonest and deceitful behavior in handling of legal matters, notwithstanding claims that alleged mental condition of success neurosis contributed to mis-

conduct); *People v. Rice,* 728 P.2d 714, 715 (Colo.1986) (disbarring attorney for practicing while under suspension and for the felony of forgery based on forging his deceased mother's name to several of her social security checks).

Andersen's counsel requested that the PDJ and Hearing Board impose a "conditional disbarment" on Andersen for a period of time, allow Anderson to continue practicing law for the purpose of allowing Andersen to demonstrate his intention to rehabilitate himself and his commitment to recovery.[11] The rules regarding attorney discipline do not authorize a "conditional disbarment." The structure of the system requires disbarment upon a showing of sufficiently grievous conduct. If, after the passage of not less than eight years, the offending lawyer desires to be readmitted to the practice of law, a subsequent proceeding is required in which the offending lawyer must prove that he has successfully retaken the bar examination and that he is rehabilitated before he is readmitted to the practice of law. Imposition of the requested "conditional disbarment" would eliminate those requirements and is contrary to the intent underlying the structure of the system. In light of the present facts and in accordance with the requirement to protect the public, the PDJ and Hearing Board find that disbarment is warranted and required. The acts in which Andersen knowingly engaged demonstrate that he is both dishonest and not sufficiently trustworthy to practice law. The public would be placed at continuing risk if he were allowed to do so. A lesser sanction would simply not comport with the principles of the legal profession nor with prior case law for similar misconduct.

The PDJ and Hearing Board considered aggravating and mitigating factors pursuant to ABA *Standards* 9.22. Andersen had one prior letter of admonition in 1997 for conduct unrelated to the facts in this case, *id.* at 9.22(a); he had a dishonest and selfish motive when taking the trust account checks, forging Marrison's signature, using the client funds for his own purposes, and taking a vehicle that did not belong to him; *id.* at 9.22(b); Andersen demonstrated a pattern of misconduct in both the neglect of his clients, the forgery of the checks, the conversion of the client funds, and the taking of the vehicle, *id.* at 9.22(c); he committed multiple offenses, *id.* at 9.22(d); and at least two of the victims who were impacted by Andersen's behavior were vulnerable, Marrison and his juvenile client; *id.* at 9.22(h).

The PDJ and Hearing Board considered factors in mitigation pursuant to ABA *Standards* 9.32. Andersen suffered from depression during the time period in question, *id.* at 9.32(c), and he made full and free disclosure to the disciplinary board and demonstrated a cooperative attitude toward the proceedings, *id.* at 9.32(e). It should be noted in this regard that Andersen flew from California where he is presently employed as a paralegal in a law firm to attend the hearing. Andersen suffered from physical impairment arising from cocaine and alcohol abuse, *id.* at 9.32(h), and he demonstrated remorse for his conduct, *id.* at 9.32(*l* ).

Andersen is committed to his rehabilitation through his affiliation with a recovery program in California. He has remained drug and alcohol free since July 25, 1999 and intends to remain so. Although the factors in mitigation are substantial, they are insufficient to reduce the presumed sanction of disbarment. They do, however, at least in part, suggest that Andersen has begun the process of rehabilitation. C.R.C.P. 251.29.

### IV. ORDER

It is therefore ORDERED:

1. Michael P. Andersen, registration number 22139, is DISBARRED from the practice of law effective thirty-one days from the date of this Order, and his name shall be stricken from the roll of attorneys licensed to practice law in this state;

2. Andersen is ORDERED to pay the costs of these proceedings;

---

**11.** Andersen's counsel acknowledged that the rules do not expressly provide for a "conditional disbarment."

3. The People shall submit a Statement of Costs within fifteen (15) days of the date of this Order. Respondent shall have ten (10) days thereafter to submit a response thereto;

4. Prior to the submission of any Petition for Readmission pursuant to C.R.C.P. 251.29, Andersen shall pay to Patricia Marrison the sum of $3,400.00 plus statutory interest from February 17, 1999.