2005 WY 21

Lora GILSTRAP; Criss Corallino; Carole Corallino; DAVE Gilstrap; Iris Hehn; and Jeanarae Booth, f/k/a Jeanarae Shannon Herbert, Appellants (Plantiffs),

v.

JUNE EISELE WARREN TRUST; Jean Earl Eisele; William Eisele Family Mineral Trust; Marion Scott; Mary Scott; James Scott; Patty Scott; Donald Scott; Vonona Scott; Marilyn Storms; and Douglas Scott, Appellees (Defendants).

No. 04–42.

Supreme Court of Wyoming.

Feb. 23, 2005.

Before HILL, C.J., and GOLDEN, KITE and VOIGT, JJ., and STEBNER, D.J., Ret.

KITE, Justice.

[¶ 1] After their mother died in 1938, each of three siblings, Ray E. Gilstrap (Ray), William P. Gilstrap (William) and Daisy Pearl Williams (Daisy), received an undivided one-third interest in a 680–acre ranch with a 320–acre mineral estate pursuant to her will. However, the siblings agreed to an alternative distribution of the estate: Ray received the entire surface estate, Ray and William each received one-half of the mineral estate, and Daisy received other assets. William and Daisy subsequently executed a warranty deed purporting to convey the entire 680–acre ranch to Ray, and reserving to each of them a one-third interest in the mineral estate. In 2003, William and Daisy's heirs (appellants) initiated a quiet title action claiming an interest in the minerals. The district court granted Ray's successors' (appellees) motion for summary judgment finding the appellants had no interest in the mineral estate.[1] We reverse.

## ISSUES

[¶ 2] The appellants raise the following issues on appeal:

A. Did the District Court misapply the *Duhig* doctrine as stated in *Duhig v. Peavy–Moore Lumber Co.*, 135 Tex. 503, 144 S.W.2d 878 (1940), and adopted by the Wyoming Supreme Court in *Body v. McDonald*, 79 Wyo. 371, 334 P.2d 513 (1959), when it purported to enforce the warranty so as to grant to Ray E. Gilstrap more than was necessary to make him whole?

B. Did the District Court err by not examining the objective knowledge of the parties at the time the deed was executed, based on the documents of record, as a specific fact and circum-

Representing Appellants: Thomas E. Lubnau, II and Nathan S. McLeland of Lubnau, Bailey & Dumbrill, P.C., Gillette, Wyoming.

Representing Appellees June Eisele Warren Trust, Jean Earl Eisele, William Eisele Family Mineral Trust, Marion Scott and Mary Scott: Randall T. Cox, Gillette, Wyoming.

Representing Appellees James Scott, Patty Scott, Donald Scott, Vonona Scott, Marilyn Storms and Douglas Scott: James L. Edwards and Kurt A. Infanger of Stevens, Edwards, Hallock & Carpenter, P.C., Gillette, Wyoming.

1. The appellants herein are heirs of William and Daisy. They are Lora Gilstrap, Criss Corallino, Carole Corallino, Dave Gilstrap, Iris Hehn and Jeanarae Booth. The appellees are successors in title to Ray. They are the June Eisele Warren Trust, Jean Earl Eisele, William Eisele Family Mineral Trust, Marion Scott, Mary Scott, James Scott, Patty Scott, Donald Scott, Vonona Scott, Marilyn Storms, and Douglas Scott.

stance to discern the objective intent of the parties?

The Eisele appellees state the issues as:

1. What is the meaning of an attempt to reserve all of the grantor's estate, or more than he owns, in the same instrument by which he conveys and warrants such estate?

2. May the Appellants assert a new theory of the case after entry of judgment, asking this appellate body to reform the deed, when the Appellants did not petition for, nor prove, reformation in the trial court?

The Scott appellees present a single issue:

Were the appellees entitled to summary judgment as a matter of law?

## FACTS

[¶ 3] Mrs. Sigel Gilstrap died in August of 1938. In her will, she left a 680–acre surface estate with a 320–acre mineral estate to her three children, Ray, William and Daisy. The siblings agreed, however, to divide the property differently than their mother decreed in her will. In 1939, pursuant to the siblings' agreement, the district court entered a decree of distribution. The decree ordered that Ray receive the entire 680–acre surface estate and one-half of the 320–acre mineral estate, William receive the other one-half of the mineral estate and other assets, and Daisy receive other assets, but no real property.

[¶ 4] In November of 1940, William, Daisy and their spouses executed a warranty deed purporting to convey the entire property, both surface and minerals, to Ray, as grantee, for $1,500 consideration. However, the deed also provided as follows:

Excepting and reserving however to Daisy Pearl Williams, formerly Daisy Pearl Rose, Gridley, Butte County, California, an undivided one-third interest, and to William Preston Gilstrap of Gillette, Campbell County, Wyoming, an undivided one-third interest, in and to all oil, gas and other mineral rights in said lands not heretofore reserved by the United States.

[¶ 5] In February 2003, William and Daisy's heirs brought a quiet title action claiming an interest in the mineral estate. They alleged the parties to the deed intended to vest a one-third mineral interest in each sibling. However, they conceded that because Ray did not join as a grantor to the warranty deed, his one-half interest remained unaffected. Ray's successors counterclaimed and asked that the title to all of the mineral interest be quieted in their favor. They claimed the warranty deed conveyed the entire mineral estate to Ray because Daisy's attempt to reserve an interest she did not own should be attributed to William, causing his reservation to exceed the one-half interest he owned. Thus, they claimed they were entitled to the entire mineral estate pursuant to the rule established in *Duhig v. Peavy–Moore Lumber Co.*, 135 Tex. 503, 144 S.W.2d 878 (1940). Both parties moved for summary judgment.

[¶ 6] The district court granted the defendants' motions and denied the plaintiffs', ruling that, pursuant to the *Duhig* rule, Ray's successors own the entire mineral estate. William and Daisy's heirs appeal the order denying their motion for summary judgment and granting the defendants' motions for summary judgment.

## STANDARD OF REVIEW

[¶ 7] The district court resolved this case by granting and denying cross motions for summary judgment. Generally, a denial of a motion for summary judgment is not an appealable final order. *Wolter v. Equitable Resources Energy Co.*, 979 P.2d 948, 953 (Wyo.1999). However, as we stated in *Lieberman v. Wyoming.com LLC*, 11 P.3d 353, 356 (Wyo.2000), there are exceptions to this rule. When the district court grants one party's motion for summary judgment and denies the opposing party's motion for summary judgment and the district court's decision completely resolves the case, both the grant and the denial of the motions for summary judgment are subject to appeal. *Id.* The district court disposed of the entire case in a single order by denying the appellant's motion and granting the appellees' motions. We will, therefore, review the entire matter.

[¶ 8] Our standard for reviewing summary judgments is well settled:

Summary judgment is appropriate when no genuine issue as to any material fact exists and the prevailing party is entitled to have a judgment as a matter of law. A genuine issue of material fact exists when a disputed fact, if it were proven, would have the effect of establishing or refuting an essential element of the cause of action or defense which the parties have asserted. We examine the record from the vantage point most favorable to the party who opposed the motion, and we give that party the benefit of all the favorable inferences which may fairly be drawn from the record. We evaluate the propriety of a summary judgment by employing the same standards and by using the same materials as were employed and used by the lower court. We do not accord any deference to the district court's decision on issues of law.

*Bixler v. Oro Mgmt., L.L.C.,* 2004 WY 29, ¶ 10, 86 P.3d 843, ¶ 10 (Wyo.2004) (citations omitted). Neither party disputes the relevant facts of this case, and thus, this Court must only determine whether summary judgment was proper as a matter of law. *Cities Service Oil and Gas Corp. v. State,* 838 P.2d 146 (Wyo.1992).

## DISCUSSION

[¶ 9] The ultimate issue to be decided in this appeal is what portion of the mineral estate the 1940 warranty deed conveyed to Ray. The district court concluded that because Daisy owned no interest in the mineral estate, her reservation of one-third failed and was attributed to William, thus causing William to reserve two-thirds when he only owned one-half. On the basis of that conclusion, the district court applied the rule that where a grantor conveys and reserves an interest in minerals in the same instrument, and there is a prior outstanding interest which is not excepted from the operation of the deed so that effect may not be given to both the grant and the reservation, the attempted reservation fails because the conveyance is necessary to make the grantee whole.

R. Hemingway, *The Law of Oil and Gas,* p. 92 (3d ed.1991).

[¶ 10] The appellants argue the deed's language is unambiguous and evidences William and Daisy's intent that they each reserved one-third of the minerals and only granted Ray a one-third interest. They argue that to give effect to the plain language of the deed we must look at both Daisy's and William's attempted reservation. In addition, appellants claim the objective evidence of Ray's knowledge of his own outstanding interest should prevent him from receiving all of the minerals as a result of this deed because the parties could not have intended that result. However, the appellants then offer two possible interpretations of what the parties might have intended. Appellants suggest the parties to the deed could have intended that William reserved a full one-third interest or they could have intended that he reserved only one-third of his one-half interest. In the latter case, they suggest the parties could have intended that Daisy also reserved one-third of one-half, although they do not explain out of whose interest that would have been carved. In addition, they point out that it does not matter what interest Daisy may have acquired, because she left her estate to William.

[¶ 11] The appellees agree with the district court's ruling. Further, they argue the appellants are essentially claiming the deed should be reformed, a claim that was not made to the district court.

[¶ 12] We interpret a warranty deed like a contract "from specific language of the deed," and "begin by looking at the instrument itself." *Bixler,* ¶ 16. We must first examine the terms of the deed and give them their plain and ordinary meaning. Plain meaning is that "meaning which [the] language would convey to reasonable persons at the time and place of its use." *Id.,* ¶ 14. When the provisions in the contract are clear and unambiguous, the court looks only to the "four corners" of the document in arriving at the intent of the parties. Determining the parties' intent is our prime focus in interpreting or construing a contract. *Boley v. Greenough,* 2001 WY 47, ¶ 11, 22 P.3d 854, ¶ 11 (Wyo.2001).

[¶ 13] Although substantial disagreement exists over the meaning of this deed, neither party suggests the deed's language is ambiguous. Differing interpretations of contracts alone do not constitute ambiguity requiring extrinsic evidence. *Newman v. RAG Wyoming Land Co.*, 2002 WY 132, ¶ 11, 53 P.3d 540, ¶ 11 (Wyo.2002). Said another way, a contract is not ambiguous only because the parties urge varying interpretations. *In re: Estate of Corpening*, 2001 WY 18, ¶ 10, 19 P.3d 514, ¶ 10 (Wyo. 2001). Whether a contract is ambiguous is a question of law to be decided by the court. *Id.*, ¶ 8. In interpreting unambiguous contracts involving mineral interests, we have consistently looked to surrounding facts and circumstances, the relations of the parties, the subject matter of the contract, and the apparent purpose of making the contract. *Boley*, ¶ 11. *See also Newman*, ¶ 11; Samuel Williston, *A Treatise on the Law of Contracts*, § 32:7 (4th ed.1999) (footnotes omitted). In the absence of any ambiguity, the contract will be enforced according to its terms because no construction is appropriate. *Caballo Coal Co. v. Fidelity Exploration & Production Co.*, 2004 WY 6, ¶ 11, 84 P.3d 311, ¶ 11 (Wyo.2004).

[¶ 14] In deeds with express reservations or exceptions, "the key question is, not what the grantor purported to retain for himself, but what he purported to give to the grantee." 1 Howard R. Williams and Charles J. Meyers, *Oil and Gas Law*, § 311, p. 580.34 (Rev.2003).

Specifically, there are three quanta of interest that must be ascertained in order to construe a deed that contains a reservation. First, the quantum of interest specified in the granting clause must be determined. If the granting clause does not expressly limit the grant to a lesser amount, then the quantum of interest purportedly conveyed is 100 percent of all right, title and interest. The next step in this process is to ascertain the quantum of interest reserved in a subsequent clause.

The final quantum to be determined is that quantum of interest the grantee is to receive under the deed. This amount can be calculated by subtracting the quantum

of interest reserved to the grantor from the quantum of interest conveyed in the granting clause.

*Cole v. Minor*, 518 So.2d 61, 63 (Ala.1987) (citations omitted).

[¶ 15] In the deed in this case, the quantum of interest in the granting clause is 100% of all title, right and interest, including mineral rights, in the described property. The language of the granting clause is clear and unambiguous and describes the full 680–acres. When the surface is granted without reference to the mineral estate, it is presumed the mineral estate is included. *Town of Moorcroft v. Lang*, 779 P.2d 1180 (Wyo. 1989).

[¶ 16] Next, we turn to the reservation. The grantors each expressly reserved an undivided one-third interest "in and to all oil, gas and other mineral rights in said lands...." The reservation clause reflects the grantors' intention to reserve two-thirds of the minerals collectively and, therefore, the intention to grant one-third.

[¶ 17] In situations where a party attempts to grant more property than he or she owns, that excess grant is a nullity and the party is simply deemed to have conveyed all of the interest owned. Williams and Meyers, *supra*, at 580. However, if such a grant is made with a warranty deed, the grantor is warranting, or promising, that he owns what the deed purports to convey and if he does not, he is liable for a breach of warranty. *Id.* Where a mineral owner makes a grant and also attempts to reserve an interest, but does not own a sufficient interest to cover both grants because of an outstanding interest, some jurisdictions have adopted the rule established in *Duhig* which requires the reservation to fail to the extent necessary to effect the grant. Williams and Meyers, *supra*, at 580.29.

In *Duhig*, a third party owned an outstanding 1/2 mineral interest in certain land and the grantor owned the surface and the remaining 1/2 mineral interest. The grantor conveyed the surface to the grantee by warranty deed with a reservation of 1/2 interest in all the minerals under the surface. The grantor and grant-

ee both claimed the 1/2 mineral interest that was not owned by the third party. The Texas Supreme Court concluded that the grantee owned the surface and a 1/2 mineral interest, the third party owned the outstanding 1/2 mineral interest, and the grantor owned nothing.

*Acoma Oil Corp. v. Wilson,* 471 N.W.2d 476, 479 (N.D.1991). The effect of *Duhig* is that if a grantor does not own a large enough mineral interest to satisfy both the grant and the reservation, the grant must be satisfied first because the obligation incurred by the grant is superior to the reservation. *Id.*

[¶ 18] This Court adopted *Duhig* in *Body v. McDonald,* 79 Wyo. 371, 334 P.2d 513 (1959). In *Body,* the grantors held only a three-quarters mineral interest, a one-quarter interest having been previously reserved to a third party. They transferred the property by a warranty deed that described the entire mineral interest and reserved a one-quarter mineral interest. We held the grantors were estopped from claiming that the grantees received less than three-quarters of the mineral interest even though the grantees had actual notice of the outstanding one-quarter interest. Although the grantee was aware of the outstanding one-quarter interest, we held that notice is irrelevant as the grantor may warrant title even when he does not own what he is warranting. *Id.* at 515.

[¶ 19] Two rationales support the result reached in both *Duhig* and *Body.* First, because the deed purported to reserve the same percentage interest as had been previously reserved, the reservation clause could simply be construed as having withdrawn the previously reserved interest not owned by the grantor from the operation of the deed. Williams and Meyers, *supra,* at 580.31–32. A second rationale relied upon in both cases is based upon a two-step reasoning. First, the properly construed deed conveyed a one-half interest in *Duhig* and a three-quarter interest in *Body.* Second, the reservation clause attempted to retain an interest in the grantor which was in addition to the outstanding interest in a third party and that breached the grantor's warranty of title to the conveyed interest. Analogizing to the doctrine of estoppel by deed, the courts in both cases held the grantors were estopped from asserting the reservation against the grantees. Thus, the grantees owned what was purported to have been conveyed and the reservation failed. *Id.* at 580.33. As noted by Williams and Meyers, "the key question is, not what the grantor purported to retain for himself, but what he purported to give to the grantee." *Id.* at 580.34.

Both courts and commentators have questioned, criticized, and distinguished the so-called *Duhig* rule, focusing particularly on whether or not it gives effect to the intent of the parties and whether its application results·in the grantee getting more than what he bargained for. Williams & Meyers, *supra,* at 580.37. These concerns arise most often where the grantee has actual or constructive notice of the outstanding interest and, therefore, arguably is not expecting a conveyance of 100% of the mineral interest less the grantor's purported reservation. Some courts· faced with this situation have refused to apply *Duhig* and have instead reached a result they find more consistent with the parties' intent. *Hartman v. Potter,* 596 P.2d 653 (Utah 1979); *Gilbertson v. Charlson,* 301 N.W.2d 144 (N.D.1981). However, that approach raises questions of subjective deed interpretation where reformation based upon extrinsic evidence may be the proper remedy, versus objective deed construction, which provides certainty for title examiners and the marketplace. Willis H. Ellis, *Rethinking the Duhig Doctrine,* 28 Rocky Mt. Min. L. Inst., p. 954 (1983); Richard C. Maxwell, *Some Comments on North Dakota Oil and Gas Law–Three Cases from the Eighties,* 58 N.Dak. L.Rev., p. 439 (1982). In *Body,* this Court specifically rejected the argument that notice should defeat the application of the rule stating, "learned counsel have failed to distinguish between an estoppel in pais and an estoppel by deed." *Body,* 334 P.2d at 517. Williams and Meyers points out that constructive notice exists in all cases involving recorded title and that breach of warranty actions and estoppel by deed are not barred by actual or constructive notice. Williams and Meyers, *supra,* 580.37 and 580.45.

[¶ 21]   Before applying the accepted rules of construction to this deed, we note that the facts in this case differ in three important ways from those in other cases we found in researching this issue: first, in this case, the deed contained two grantors which raised the question of whether they each warranted ownership of the full amount of the grant; second, one of the grantors who reserved a one-third interest owned no interest; and third, the grantee seeking to enforce the warranty is a co-tenant of one of the grantors and, thus, the owner of the outstanding interest.   With regard to the scope of the warranty in the context of multiple grantors, the general assumption is that the warranty obligation is joint, not several, unless specific language is included in the deed indicating that each grantor is warranting only his or her individual interest.  *Windell v. Miller*, 687 N.E.2d 585 (Ind.Ct.App. 1997).   In this case, the deed contains no such language of "severance", thus, William and Daisy are jointly liable for the warranty.

[¶ 22]   Before determining whether a breach of warranty occurred, thus triggering application of the *Duhig* rule, we must first determine what interest was conveyed. This particular warranty deed unambiguously conveyed the entire 680–acre estate and reserved to William and Daisy separately an undivided one-third interest in the minerals. That language is clear.   Giving effect to the plain language of the conveyance and the reservation, the deed purported to convey to Ray one-third of the mineral interest.

[¶ 23]   However, the district court, considering facts outside the four corners of the deed, determined that because Daisy had no interest in the minerals at the time the deed was executed, her reservation was a nullity. It then concluded the interest unsuccessfully reserved to her should be attributed to William causing him to reserve two-thirds to himself, an amount exceeding his one-half interest, and resulting in a breach of warranty.   Applying *Duhig* under those determinations, the district court concluded the entire reservation failed and Ray received all of the mineral interest.   The Scott appellees suggest another approach to Daisy's reservation that reaches the same result.   They contend

that because the reservation to Daisy "has no meaning," and William granted 100% of the minerals and only reserved one-third to himself, the deed, in effect, conveyed two-thirds to Ray.   However, because William only owned one-half, he, in effect, conveyed all he owned and the reservation failed.

[¶ 24]   We find both interpretations of Daisy's attempted reservation flawed. Faced with a dearth of guidance from other jurisdictions concerning the impact of one grantor's failed reservation on the other grantor and the grantee, we examine first the nature of the attempted reservation and why it failed.   While, as we held in *Simpson v. Kistler*, 713 P.2d 751 (Wyo.1986), William could have used a reservation to carve out an interest from his own to grant to Daisy, a stranger to the title, we find nothing in the language of the deed to indicate such an intent.   She cannot reserve what she does not own, and, consequently, her attempted reservation failed.   However, while Daisy's reservation may have been ineffective in creating any interest in her, it cannot be ignored when considering what the parties intended Ray to receive under this deed that purported to convey to him only a one-third interest. Both the district court's reasoning, which added the failed reservation to William's reservation, and the interpretation urged by the Scott appellees, which added it to the interest conveyed to the grantee, require us to ignore the face of the deed, which purports to grant only a one-third interest to Ray. We find no authority to support either rationale. Instead, as recognized in commentary and analysis of *Duhig* and its progeny, the rule that imposes the risk of failure of title on the grantor was aimed at protecting the interest the deed purports to convey to the grantee. We find no precedent to support giving the grantee more than the deed itself granted.

[¶ 25]   Neither the doctrine of estoppel by deed nor enforcement of a warranty, which are both underpinnings of the *Duhig* rule, create an interest in the grantee greater than the deed itself would have done. "Estoppel by deed is a defensive doctrine which cannot be used to create a right where none existed.   Its function is not to create rights but to preserve them.   Consequently,

estoppel by deed cannot be used to confer upon the grantee a greater title than the deed would have conferred had it been effective." *Hawkins v. Texas Oil and Gas Corp.*, 724 S.W.2d 878, 888 (Tex.App.1987) (citations omitted). Likewise, a warranty warrants only that purportedly conveyed by the language of the deed. *Ellis, supra*, at 953. Since the deed purported to convey a one-third interest to Ray, a one-third interest to Ray is the extent of William's warranty. That grant can be fulfilled out of William's one-half interest, leaving him with a one-sixth interest without breaching the warranty. Williams and Meyers, *supra*, at 580.36.

[¶ 26] Even if the district court or appellees were correct that Daisy's failed reservation meant William's grant or reservation was different than stated in the deed, an interpretation conveying all of the interest to Ray was supportable only if William intended to warrant to Ray that he owned 100% of the minerals. No such intent was shown given that Ray owned the outstanding interest.

[¶ 27] The *Duhig* rule seeks to enforce the warranty of ownership of 100% created by a warranty deed, such as the one at issue here, which purports to convey the entire interest. Wyo. Stat. Ann. § 34–2–103 provides that grantors of warranty deeds covenant that 1) the grantor was lawfully seized of an indefeasible fee simple estate in the property with the right to convey the same, 2) the estate was then free of encumbrances, and 3) the grantor warrants possession of the property and promises to defend the title thereto "against all persons who may lawfully claim the same." The grantee in a warranty deed may sue his or her immediate grantor for breach of covenant in the deed. The ordinary remedy for breach of a covenant of title in a conveyance of land is an action at law for damages. 20 Am.Jur. 2D § 102 (1995). In a suit for breach of warranty of title, the burden is on the plaintiff to show eviction, or that which amounts to eviction, or an outstanding paramount title which he was obliged to yield to a third person. *Weiss v. Old Republic Nat'l Title Ins. Co.*, 262 Ga.App. 120, 584 S.E.2d 710, 712–713 (2003). Because he already owned the property, Ray did not and could not suffer any

actual or constructive eviction as a result of the outstanding interest, thus a hypothetical breach of warranty claim by Ray would have failed.

[¶ 28] Consequently, we conclude where the grantee is a co-tenant and thus the owner of the outstanding interest, that interest must be subtracted from the interest purportedly warranted by the grantor. We do not reach this conclusion because of the grantee's actual or constructive knowledge of the outstanding interest, which we observe could be found in any conveyance involving recorded title. Neither do we reach this conclusion in reliance upon our interpretation of the parties' subjective intent, an approach that injects an unacceptable level of uncertainty into recorded title. Instead, we simply hold that a grantee may not bring an action for breach of warranty where he owns the outstanding interest that the grantor is alleged to have warranted.

[¶ 29] In the only other case found in our research involving a grant to a co-tenant, *Gilbertson*, 301 N.W.2d 144, the court refused to interpret the deed as conveying 100% and apply *Duhig* because the grantee had actual and constructive notice of the outstanding interest. The court concluded:

Because of the actual notice of the existence of the 31 2/3 percent interest in the minerals to the grantees, the constructive notice of the five percent reservation of the minerals in the state, and the 50 percent reservation of the minerals in the deed by which the grantees received the surface, the grantees were clearly made aware that the grantors were not warranting title to 50 percent of the minerals plus the five percent of the minerals reserved by the state and the 31 2/3 percent of the minerals then owned by the grantees. Under these circumstances, there can be no implied warranty that the grantors are warranting what they have reserved.

*Id.* at 148 (citation omitted). The reasoning of the court focused on actual and constructive notice and on the court's interpretation of what the parties intended.

[¶ 30] While we recognize determining the parties' intent is the focus of our effort

when interpreting a deed, we find it difficult to speculate as to Ray, William and Daisy's intent in the case before us. It could be argued they were trying to undo the agreement to distribute the estate differently than their mother's will had done and to cause each sibling to own a one-third interest in the minerals. However, that interpretation is questionable given the fact that Ray did not join as a grantor, thus indicating he had no intent to convey any of his one-half interest to his siblings. Appellees argue that because Ray paid $1,500 in consideration, a substantial amount in 1940, he must have intended to get all of the mineral interest. However, no facts regarding the value of the mineral estate appear in the record to support that conclusion. Nothing in the record or the language of the deed tells us why Daisy, who had no interest to grant or reserve, joined in the deed. Extrinsic evidence of all of these theories may have been relevant in a claim for reformation due to mutual mistake. However, no such claim was made. Given the plain language of the deed, we see no reason to speculate as to the parties' subjective intent.

[¶ 31] When we apply this holding regarding co-tenants to the two different treatments of Daisy's reservation suggested by the district court and the Scott appellees respectively, the result is the same as we reached by simply construing the plain language of the deed. Even if Daisy's failed reservation is somehow attributed to William causing his attempted reservation to be two-thirds as suggested by the district court, he owns and warrants only one-half (having deducted his co-tenant's one-half interest) and the deed's plain language conveying one-third can be fully effected, and one-sixth remains with William. If Daisy's failed reservation is added to the amount purportedly conveyed as suggested by the Scott appellees, the result exceeds the amount conveyed on the face of the deed and the amount warranted (one-half). William's attempted reservation of one-third can be given effect under the otherwise applicable *Duhig–Body* estoppel/warranty analysis by deducting his one-third reserved from the one-half he warrants, resulting in a reservation of one-sixth. Giving effect to William's reservation of one-

third does not violate *Duhig–Body* principles because the warranty is not breached, even though a part of the grant fails—i.e. Ray does not receive two-thirds, but only one-third. This result is more consistent with the party's likely intent since Ray cannot expect to receive a two-thirds interest because he already owns one-half.

[¶ 32] Giving effect to the plain language of the deed, Ray is entitled to his one-third interest, which can be satisfied out of the one-half interest owned and warranted by William, and William is entitled to the remainder of his interest, which is one-sixth. William did not retain a full one-third interest because he could not fulfill his grant of one-third interest and still retain a one-third interest when he only owned a one-half interest. If both the grant and the reservation cannot be given effect, the risk of title failure is on the grantor and the grant must prevail.

[¶ 33] We reverse the district court's grant of the appellees' motions for summary judgment and remand for entry of an order consistent with this opinion.